[No. F018303. Fifth Dist. July 1, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
LINDA KAY INGRAM, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part II.

1746

**COUNSEL**

Marisa Nayfach, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Margaret Venturi and Wanda Hill Rouzan, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BROWN, (G. A.), J.*—**

## THE CASE

Linda Kay Ingram appeals from the judgment entered on a jury verdict convicting her of possession of methamphetamine for sale (Health & Saf. Code, § 11378) and misdemeanor possession of marijuana (Health & Saf. Code, § 11357, subd. (b)). She was placed on probation for three years on condition, inter alia, she serve one year in the county jail. On appeal, she contends (1) the trial court erred in denying her motion to suppress evidence (Pen. Code, § 1538.5), and (2) the court mishandled her *Marsden* motion.

---

*Retired Presiding Justice of the Court of Appeal, Fifth District, sitting under assignment by the Chairperson of the Judicial Council.

## THE FACTS

The evidence presented at the hearing on the suppression motion showed that on August 20, 1991, members of the Bakersfield Police Department and agents from the Drug Enforcement Administration, Bureau of Narcotics Enforcement were conducting a joint investigation of the drug activities of John Ingram. About 1 p.m. that afternoon, Special Agent Larry Slate was surveilling Mr. Ingram's business, the Capone Cycle House, in Bakersfield. The officers planned to execute search warrants later that day at the business and at Ingram's residence.

While watching the Cycle House, Agent Slate saw a number of vehicles drive up to the business. One of these was a tan pickup which Slate knew was registered to John Ingram. Appellant, who Slate knew was John Ingram's wife, was driving. The officer also believed appellant lived in a house that was her husband's residence, which had been under surveillance and was going to be searched that day as part of the same investigation. As spouse of John Ingram, she could have had a community interest in the business. The record is not clear in this regard. Appellant entered the Cycle House and walked to the office area of the business and remained 10 to 15 minutes. When appellant left, she headed toward the residence of another person connected to the investigation who lived a short distance away. Slate did not actually see where she went, however.

Appellant returned to the business within 10 minutes and remained another 15 or 20 minutes. As she left a second time, the officers closed in to execute the search warrant. Appellant was not named in the warrant; nevertheless, Slate radioed back-up officers to detain her. Two uniformed police officers detained appellant in the driveway as she was about to exit the premises. The officers escorted her back to the shop and detained her along with other persons in the business at the time. Slate testified it was customary practice to detain people on the premises to be searched.

About 10 minutes later, Detective Steve Ramsey of the Bakersfield Police Department arrived. He described the nature of the investigation to appellant and informed her that Mr. Ingram had been arrested. Because the business was then being searched, he asked her if she would accompany him to the police department so he could speak with her about her relationship with Ingram and his drug activities. She was very cooperative and agreed to go with him.

Ramsey noticed appellant had a large purse which was slightly open. He asked her if he could search her purse. He did not recall if he asked to search

before or after he asked her to come down to the police station. Appellant consented without hesitation. Ramsey found suspected methamphetamines and marijuana and several thousand dollars in her purse.

*Defense*

Appellant denied she voluntarily consented to the detention or the search of her purse. She testified she had gone to the cycle shop to drop off a dog which her husband, Ingram, had agreed to watch for her while she filed divorce papers against *him.* She did not go into the office and had no interest in the business. She was not an employee of the business.

As she was leaving the business, an officer approached her truck with gun drawn and told her to halt. She was afraid he would shoot her so she stopped her vehicle. He asked her to step out of the vehicle and come inside. Upon entering the shop, she saw her daughter and her daughter's boyfriend handcuffed. She was also handcuffed.

Officer Ramsey had her purse open and was looking through it. He said, "you don't mind if I go through this, do you? She replied, "what can I say," because he was already looking through it. She did not know she could object to the search but she did not consent.

Appellant testified she agreed to accompany the officer to the police station but told him she did not have much information because she and Ingram had been separated for some time. She admitted she tried to cooperate as much as she could.

The court denied the motion to suppress, finding the detention proper under *Michigan* v. *Summers* (1981) 452 U.S. 692 [69 L.Ed.2d 340, 101 S.Ct. 2587]. The court also found appellant had consented voluntarily to the search of her purse; she appeared to be a very cooperative individual and communicated that cooperation to the officers.

DISCUSSION

I. *The detention and subsequent search of appellant's purse.*

■ Our standard of review from the denial of a motion to suppress is well established. We defer to the trial court's factual findings where supported by substantial evidence, but we must exercise our independent judgment to determine whether, on the facts found, the search and seizure were reasonable under the Fourth Amendment. (*People* v. *Leyba* (1981) 29 Cal.3d 591, 596- 597 [174 Cal.Rptr. 867, 629 P.2d 961].)

" ' "[T]he power to judge the credibility of the witnesses, resolve any conflicts in the testimony, weigh the evidence and draw factual inferences, is vested in the trial court. On appeal all presumptions favor the exercise of that power, and the trial court's findings on such matters, whether express or implied, must be upheld if they are supported by substantial evidence." ' " (*People* v. *Decosse* (1986) 183 Cal.App.3d 404, 407 [228 Cal.Rptr. 114], quoting *People* v. *Lawler* (1973) 9 Cal.3d 156, 160 [107 Cal.Rptr. 13, 507 P.2d 621], italics omitted.)

"[W]hen two or more inferences can reasonably be deduced from the facts as found, a reviewing court is without power to substitute its deductions for those of the trial court or jury." (*Decosse, supra,* 183 Cal.App.3d at p. 408.)

The parties agree appellant was detained; her freedom was restrained to the point where she was not free to leave. (*United States* v. *Mendenhall* (1980) 446 U.S. 544, 554 [64 Cal.Rptr. 497, 509, 100 S.Ct. 3051].) The People contend the detention was lawful under *Michigan* v. *Summers, supra,* 452 U.S. 692; appellant submits the circumstances of her detention—a visitor to a business establishment—render the *Summers* rule inapplicable.

■ In *Michigan* v. *Summers, supra,* 452 U.S. at page 705 [69 L.Ed.2d at page 351], the United States Supreme Court held that a warrant to search for contraband founded on probable cause implicitly carries with it the authority to detain the occupants of the premises while a proper search is conducted. The detainee's status as an occupant was critical to the court's reasoning in upholding the detention.

"Of prime importance in assessing the intrusion is the fact that the police had obtained a warrant to search respondent's house for contraband. A neutral and detached magistrate had found probable cause to believe that the law was being violated in that house and had authorized a substantial invasion of the privacy of the person who resided there. . . .

" . . . . . . . . . . . . . . . . . . . . . .

"Thus, a neutral magistrate rather than an officer in the field has made the critical determination that the police should be given a special authorization to thrust themselves into the privacy of a home. *The connection of an occupant to that home gives the police officer an easily identifiable and certain basis for determining that suspicion of criminal activity justifies a detention of that occupant.*" (*Id.* at pp. 701, 703-704, italics added.)

■ The *Summers* rule authorizing the detention of occupants is logically capable of extension beyond a residence to a business premises which is

searched pursuant to a warrant for evidence of contraband. The law enforcement interests which justify the detention of occupants while a residence is searched apply equally when a business is searched and the individual searched has a significant relation to the business: (1) preventing flight in the event incriminating evidence is found, (2) minimizing the risk of harm to the searching officers and the occupants, and (3) orderly completion of the search (the occupants' self-interest will induce them to open locks to avoid the use of force). (*Michigan* v. *Summers, supra,* 452 U.S. at pp. 702-703 [69 L.Ed.2d at pp. 349-351].)[1] Likewise, the existence of the search warrant provides objective justification for detaining those who "occupy" the business premises. (*Id.* at p. 703 [69 L.Ed.2d at p. 350].)

■ Law enforcement officers may not detain "mere visitors" when they execute a search warrant at a residence. While the police are free to question a visitor to ascertain his connection to the premises, they cannot detain him to do so absent specific, articulable facts indicating such a connection. (*People* v. *Gallant* (1990) 225 Cal.App.3d 200, 210 [275 Cal.Rptr. 50]; but see, *People* v. *Huerta* (1990) 218 Cal.App.3d 744, 749-750 [267 Cal.Rptr. 243]: defendant's unannounced entry (no knock) into a residence indicated he was an occupant.)

In *People* v. *Berry* (1990) 224 Cal.App.3d 162 [273 Cal.Rptr. 509], this court considered the characteristics which distinguish a visitor from an occupant for Fourth Amendment purposes. The issue before the court was whose personal property law enforcement officers could search pursuant to a warrant to search a residence. We held, if the circumstances apparent to the searching officers show indicia of only a casual, temporary presence at the place being searched, the person is a "mere visitor" whose property cannot be searched solely because it happens to be located on premises named in the warrant. If the circumstances suggest a relationship between the person and place sufficient to connect the individual to the illegal activities giving rise to the warrant, search of the person's property on the premises is permitted. (*Id.* at p. 169.)

In *U.S.* v. *Gray* (1st Cir. 1987) 814 F.2d 49, 51, the court held that searching officers could reasonably conclude defendant was not a "mere visitor" where defendant was discovered in a private residence, outside of which a drug deal had just "gone down," at 3:45 a.m. In addition, the officers had reason to believe the seller was not operating freelance.

■ The rule that emerges from these cases is, when executing a search warrant at a business open to the public, law enforcement officers may

---

[1]In *Michigan* v. *Summers, supra,* as in the case at bench, the person detained and ultimately arrested was outside of the building, leaving the premises. (Accord, *United States* v. *Cochran* (6th Cir. 1991) 939 F.2d 337, 339.)

detain those persons on the premises when the circumstances create a reasonable suspicion of a relationship between the person and the place sufficient to connect the individual to the illegal activities giving rise to the warrant. (*People* v. *Berry*, *supra*, 224 Cal.App.3d at p. 169.) Such facts can be found by examining the relationship between the person and the place and what the executing officers could reasonably infer about the relationship, based on appearances. (*Id.* at p. 168.)

Relevant factors to be considered include ownership or control of the business or the places to be searched, and the duration and frequency of a person's presence at the business. Thus, business owners and regular employees could be detained while a business was searched pursuant to a search warrant.

Another factor is the nature of the suspected illegal activity. If the suspected illegal activity is such that its existence is not evident to others in the vicinity, a person's mere presence in the business may not sufficiently connect him or her to the activity to support a detention. On the other hand, if the suspected illegal activity is openly and repeatedly conducted within the business premises and certain persons are regular visitors to the business, the officers could detain them. (Cf. *People* v. *Banks* (1990) 217 Cal.App.3d 1358, 1363-1364 [266 Cal.Rptr. 574]; *U.S.* v. *McKie* (D.C. Cir. 1991) 951 F.2d 399, 402 [292 U.S.App.D.C. 419]; *United States* v. *Hillison* (9th Cir. 1984) 733 F.2d 692, 697: a factor in evaluating the incriminating nature of defendant's association with a place is whether known criminal conduct was contemporaneous with the association.)

The array of facts in this case and the reasonable inferences drawn therefrom would fully justify the detention had appellant been inside the business when detained, and we perceive no legal difference between her location on the driveway exiting the business but still on the business premises, and being inside the building.

Appellant was known to the officers to be John Ingram's wife, and she was driving a vehicle registered to him. The officers believed appellant lived in a house in which her husband resided and which was under surveillance. That same house was going to be searched that day as part of the investigation. During the surveillance of the business, the morning of the search, she came to the business twice in her husband's pickup, each time going to the office area of the business for 10 to 15 minutes. The trial court could infer that because she did not go to the area where an ordinary customer of the business would go, she was not a casual visitor or customer.

Under all these circumstances it was reasonable for the trial court to conclude that appellant had such a relationship to the business and to Ingram

as to create a reasonable suspicion that she was connected to the illegal activities giving rise to the search warrant. Accordingly, we hold the detention was legal and not in violation of the Fourth Amendment. The trial court was correct in denying the motion to suppress.

## II.   *Marsden motion*\*

· · · · · · · · · · · · · · · · · · · · · ·.. · · · · · ·

The judgment is affirmed.

Ardaiz, Acting P. J., and Buckley, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 14, 1993.

---

\*See footnote, *ante*, page 1745.