[No. F024880. Fifth Dist. Dec. 30, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
TERRY ODELL HANNAH, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

  \*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts I-B and II.

## COUNSEL

William J. Schmidt, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Margaret Garnand Venturi and John G. McLean, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WISEMAN, J.**—Terry Odell Hannah (defendant) challenges the denial of his motion to suppress evidence claiming he was unlawfully detained while merely visiting at a residence during service of an arrest warrant on a juvenile. Defendant and another person were asked by one officer to remain seated while other officers searched for the subject of the arrest warrant. While the search was conducted, defendant was asked who he was, and about his relationship to the juvenile named in the arrest warrant. The officer observed his pupils were dilated, and investigated further, ultimately leading to defendant's arrest for drug possession and assault on a peace officer. Based on the totality of the circumstances, we conclude defendant's detention was lawful.

### PROCEDURAL HISTORY

An information was filed on August 2, 1985, charging defendant with one count of possession of a controlled substance: cocaine (Health & Saf. Code, § 11350), and two counts of assault on a peace officer in the performance of his duty (Pen. Code,[1] § 243, subd. (c)). It was further alleged defendant had suffered three prior felony convictions, two for burglary (§ 459) and one for unlawful possession of a firearm by an ex-felon (§ 12021), for which he had served prior prison terms within the meaning of section 667.5, subdivision (b).

Defendant filed a notice of motion to suppress the evidence seized from him pursuant to section 1538.5, subdivision (a)(1), which was denied following a hearing. Subsequently, the People moved to add a fourth count to defendant's information alleging a violation of section 69, obstructing or resisting a police officer in the performance of his duty. Defendant pled guilty to that count and admitted the three prior convictions, whereupon the court dismissed the other three counts against defendant. At sentencing, probation was denied and defendant was sentenced to prison.

Defendant filed a timely notice of appeal.

---

[1] All statutory references are to the Penal Code unless otherwise noted.

## Factual History

On June 30, 1995, at approximately 10 p.m., Officer Sandoval and two other Fresno police officers went to an apartment on North U Street because they had received information a juvenile with an outstanding arrest warrant was in that apartment. When they arrived, a female resident of the apartment answered the door and consented to the police officers entering to look for the juvenile.

After entering the apartment, Sandoval observed two males seated in the living room. One of these men was defendant; the other was Daniel DeSoto. When he initially entered the living room, Sandoval asked the two men "if they could just stay seated where they were at." He then asked the two men who they were, what their relationship was to the woman who answered the door, and why they were there. Sandoval remained in the living room with defendant and the other individual while one officer searched the apartment for the juvenile and the third officer stood near the door as cover officer. Sandoval testified he asked the two men to remain seated ". . . for our own protective scope of the search of the apartment."

Within "[no] more than several minutes" of entering the apartment, Sandoval observed defendant's pupils were dilated, and therefore suspected him of being under the influence of drugs and "investigated further." Based on his observation that defendant was exhibiting symptoms of someone under the influence of drugs, Sandoval attempted to place him under arrest. Defendant tried to flee by jumping through a window that led out to a patio. The police officers attempted to stop him and a struggle ensued. Ultimately, the defendant was subdued and while conducting a search incident to arrest, Sandoval found a Chapstick container in defendant's right front pocket which contained what he believed to be rock cocaine.

## Discussion

### I. *Defendant was not unlawfully detained.*

Defendant contends Sandoval's direction to him to remain seated when the police officers entered the apartment to search for the juvenile they were there to arrest was an unlawful detention. He further contends his detention was unlawful from the beginning because the police did not reasonably believe that: defendant was the person they were attempting to arrest; defendant was involved in criminal activity; or any criminal activity had taken place or was about to take place. He also asserts that even if the initial detention was lawful, it was prolonged beyond the time reasonably necessary for the police officers to perform their legitimate function—

searching the apartment for the juvenile. Defendant claims, therefore, all of the evidence against him should have been suppressed because it was the direct result of the unlawful detention.

When reviewing a suppression motion we "defer to the trial court's factual findings, express or implied, where supported by substantial evidence. In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment. [Citations.]" (*People* v. *Glaser* (1995) 11 Cal.4th 354, 362 [45 Cal.Rptr.2d 425, 902 P.2d 729].)

## A. *The Initial Detention*

The trial court cited two bases for denying defendant's motion to suppress. First, it held defendant lacked standing to object because he had no expectation of privacy in the apartment where he was located when the police entered. However, defendant does not dispute the fact the police officers lawfully entered the apartment. Nor does he claim their search for the juvenile was unlawful. Defendant is asserting his Fourth Amendment rights were violated when he was detained by the police after they entered the apartment. Contrary to the trial court's finding, we conclude he does have standing to assert this right.

Second, the trial court found defendant had, in fact, been detained. It also found Sandoval's initial observation of defendant's dilated pupils occurred "during the time that the lawful purpose of their being there was still being carried out, that is, why [*sic*] the other officer is out checking the other rooms in the apartment." The trial court went on to find, "[s]o then we have Officer Sandoval, who is making observations during a lawful detention while he is there lawfully, and has a basis thereupon to arrest the defendant because of what he observes in plain view." The trial court concluded, therefore, the detention and subsequent arrest of defendant was lawful.

The trial court's findings of fact with respect to the circumstances of defendant's detention are supported by substantial evidence. The question then becomes whether the police officers were justified in initially detaining defendant. If the answer to that question is yes, we must determine if the period of the detention was justified.

In *People* v. *Glaser*, *supra*, the California Supreme Court noted: "To decide whether relevant evidence obtained by assertedly unlawful means must be excluded in a trial for crimes allegedly committed after June 8, 1982, we look exclusively to whether its suppression is required by the

United States Constitution. [Citations.]" (*People* v. *Glaser, supra,* 11 Cal.4th at p. 363.) The court then noted two decisions of the United States Supreme Court provided the analytical framework necessary to resolve these questions: *Terry* v. *Ohio* (1968) 392 U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 1868]; and *Michigan* v. *Summers* (1981) 452 U.S. 692 [69 L.Ed.2d 340, 101 S.Ct. 2587]. (*People* v. *Glaser, supra,* 11 Cal.4th at pp. 363-364.)

█ In its landmark opinion, *Terry* v. *Ohio, supra,* the United States Supreme Court specifically addressed for the first time the issue of when a police officer could detain and search a citizen based on something less than probable cause. The court noted the ". . . inquiry is a dual one—whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." (*Terry* v. *Ohio, supra,* 392 U.S. at pp. 19-20 [20 L.Ed.2d at p. 905].) In reaching its decision, the court recognized its analysis had to deal with the real life situations facing police on a day-to-day basis on the street when resort to obtaining an arrest warrant is not practicable. "But we deal here with an entire rubric of police conduct—necessarily swift action predicated upon the on-the-spot observations of the officer on the beat—which historically has not been, and as a practical matter could not be, subjected to the warrant procedure. Instead, the conduct involved in this case must be tested by the Fourth Amendment's general proscription against unreasonable searches and seizures." (*Id.* at p. 20 [20 L.Ed.2d at p. 905], fn. omitted.) Ultimately, the court held lawfulness of the detention of an individual based on something less than probable cause came down to "whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." (*Id.* at p. 27 [20 L.Ed.2d at p. 909].)

In *Michigan* v. *Summers, supra,* the United States Supreme Court extended the *Terry* rationale to the detention of an individual at a residence for which a search warrant had been issued. (*Michigan* v. *Summers, supra,* 452 U.S. at p. 693 [69 L.Ed.2d at pp. 343-344].) When the police arrived to search the residence, they met Summers walking down the front steps after he left the house. They requested his assistance in obtaining entry, but he claimed he did not have his key. The police detained him while they searched the house. After they found narcotics in the basement of the house, and learned Summers owned the house, they arrested him, searched him and found heroin in his coat pocket. (*Ibid.*) Finding the initial detention of the defendant was lawful, the court observed: "[S]ome seizures admittedly covered by the Fourth Amendment constitute such limited intrusions on the personal security of those detained and are justified by such substantial law enforcement interests that they may be made on less than probable cause, so long as police have an articulable basis for suspecting criminal activity."

(*Michigan* v. *Summers*, *supra*, 452 U.S. at p. 699 [69 L.Ed.2d at p. 348].) The court concluded, "[t]herefore, in order to decide whether this case is controlled by the general rule, it is necessary to examine both the character of the official intrusion and its justification." (*Id.* at pp. 700-701 [69 L.Ed.2d at pp. 348-349].) The court's assessment of the reasonableness of Summers's detention included a consideration of what legitimate law enforcement interests were involved. Among those enumerated by the court were the interests in preventing flight in the event incriminating evidence is found, and "[l]ess obvious, but sometimes of greater importance, is the interest in minimizing the risk of harm to the officers." (*Id.* at p. 702 [69 L.Ed.2d at p. 349].)

The California Supreme Court applied the *Terry* and *Summers* decisions to its resolution of the same issue in *People* v. *Glaser*, *supra*. In *Glaser*, the police were attempting to serve a search warrant for illegal drugs at a residence in Glen County on the proverbial dark and stormy night. (*People* v. *Glaser*, *supra*, 11 Cal.4th at p. 360.) When they arrived, they saw Glaser's pickup truck parked in the driveway. He was about to walk up to the house, about 50 feet away, when police officers approached him with guns drawn and directed him to lie face down on the ground. He was handcuffed, and patted down, which resulted in discovery of marijuana and a glass pipe suitable for smoking methamphetamine. (*Id.* at pp. 360-361.)

Finding the initial detention of Glaser was reasonable under the circumstances, the court stated: "Although we deal here with a detention rather than a search, we believe officer safety to be one of the government interests justifying the government intrusion in this case as well." (11 Cal.4th at p. 364.) In reaching its decision, the court balanced the character of the official intrusion on the defendant's personal security against the government interests justifying the detention. (*Id.* at pp. 365-369.) The court found the government's interest in identifying the defendant and determining his relationship to the place to be searched as well as the need to protect the officers conducting the search was more than sufficient to justify what the court considered a minimal intrusion on defendant's rights. (*Id.* at pp. 369-371.)

We have applied the analytical framework of *Summers*, *supra*, to find detention of an individual at a business location which is to be searched pursuant to a warrant is authorized "when the circumstances create a reasonable suspicion of a relationship between the person and the place sufficient to connect the individual to the illegal activities giving rise to the warrant." (*People* v. *Ingram* (1993) 16 Cal.App.4th 1745, 1753 [21 Cal.Rptr.2d 33].) In other words, as did the United States Supreme Court in *Terry* and *Summers*, and as did the California Supreme Court in *Glaser*, we analyzed the totality of the circumstances to determine whether the detention was reasonable.

This same analysis has also been employed by other courts which have addressed the issue. (See *People* v. *Samples* (1996) 48 Cal.App.4th 1197, 1206-1207 [56 Cal.Rptr.2d 245] [detention of defendant who was driving a car in which suspects whose house was about to be searched were riding was reasonable in light of association with suspects and in the interests of officer safety]; *People* v. *Thurman* (1989) 209 Cal.App.3d 817, 823-824 [257 Cal.Rptr. 517] [detention and patdown of defendant who was a visitor sitting passively and silently on the sofa in residence being searched for illegal drugs was reasonable in the interests of officer safety].)

Defendant claims his case is distinguishable from *Summers*, and other cases which have upheld the detention of an individual at the scene of a search, because all those cases involved execution of *search warrants* rather than *arrest warrants*. Although true, it is a distinction which makes no difference.

■    Defendant correctly points out that *Summers*, *supra*, and the other cases discussed, involved detention of an individual during the execution of a search warrant for contraband. By the same token, none of these cases require the existence of a search warrant for contraband as a prerequisite to finding the detention of an individual to be reasonable. The existence of a warrant is but one factor the courts consider when determining the governmental interest involved. For example, we observe the police officer in *Terry* v. *Ohio*, *supra*, did not have a search warrant *or* arrest warrant when he stopped and frisked Terry. (*Terry* v. *Ohio*, *supra*, 392 U.S. at pp. 6-9 [20 L.Ed.2d at pp. 897-899].) However, the United States Supreme Court found the actions of the police officer reasonable under the totality of the circumstances. Also, as noted in *People* v. *Samples*, *supra*, the Ninth Circuit Court of Appeals extended the *Summers* rationale to a detention of an individual during execution of an arrest warrant. (See *United States* v. *Vaughan* (9th Cir. 1983) 718 F.2d 332, 334-335 [police officers justified in detaining and doing a patdown search of defendant who was a passenger in a car driven by individual for whom arrest warrant had been issued].) "The scope of intrusion permitted without a warrant or probable cause 'will vary to some extent with the particular facts and circumstances of each case,' and there is no 'litmus-paper test' for distinguishing an investigatory stop from a full arrest. [Citations.] Consequently, we must consider the totality of the circumstances [citation] to determine if the means used by the police, including detention at gunpoint, were justified by the need of a 'reasonably prudent' officer [citation] to protect himself and others involved in the search." (*People* v. *Glaser*, *supra*, 11 Cal.4th at p. 366.)

Turning to defendant's case, we consider the scope of defendant's initial detention. The sum total of police action which resulted in defendant's

detention was Sandoval's request that defendant remain seated where he was located. The police officers neither drew their weapons nor threatened to do so when the request was made. Consequently, even though it cannot be denied defendant would reasonably have believed his liberty was restricted by Sandoval, it was the result of moral suasion rather than any threat of force. During the detention, before he was placed under arrest, defendant was not handcuffed, patted down, or searched. These factors distinguish defendant's situation from *Glaser, supra,* in which the defendant was detained at gunpoint, ordered to lie face down on the ground, handcuffed and patted down during his detention. *(People* v. *Glaser, supra,* 11 Cal.4th at pp. 360-361.) Additionally, defendant was not detained in a public place, but inside a private residence which minimized any embarrassment or stigma associated with the detention. *(Glaser, supra,* 11 Cal.App.4th at p. 367; *Michigan* v. *Summers, supra,* 452 U.S. at p. 702 [69 L.Ed.2d at p. 349].)

Finally, the duration of defendant's detention was, at most, several minutes. Although the duration of a detention is not determinative of its reasonableness, ". . . its brevity weighs heavily in favor of a finding of reasonableness. (See *United States* v. *Sharpe* (1985) 470 U.S. 675, 686-688 [84 L.Ed.2d 605, 615-617, 105 S.Ct. 1568] [20-minute investigative detention reasonable under circumstances].)" *(People* v. *Glaser, supra,* 11 Cal.App.4th at p. 367.)

It is hard to envision a more minimal intrusion on an individual's right to be free from unlawful seizure than the circumstances of defendant's detention. In fact, it is less intrusive than if Sandoval had stopped defendant on the street briefly to ask him a few questions about a crime or the whereabouts of a suspect and during the conversation concluded the defendant was under the influence of illegal drugs. Under those facts, defendant would reasonably believe he had been detained, but it is doubtful anyone would find such a detention was onerous or unreasonable. (See *Terry* v. *Ohio, supra,* 392 U.S. at p. 13 [20 L.Ed.2d at p. 901] ["Street encounters between citizens and police officers are incredibly rich in diversity. They range from wholly friendly exchanges of pleasantries or mutually useful information to hostile confrontations of armed men involving arrests, or injuries, or loss of life."].) The conclusion should not be different because the chance encounter with the police officer occurred in a private residence, which the police officer entered with the permission of the resident.

Balanced against the intrusion on defendant must be the governmental interest justifying his detention. Defendant is correct when he observes his case is distinguishable from the vast majority of reported cases in which the detention occurred during execution of a search warrant. ■ The courts

have held the existence of a search warrant is a factor to consider because it indicates a judicial officer has determined there is probable cause to believe that criminal activity is occurring at the location to be searched. (*Michigan* v. *Summers*, *supra*, 452 U.S. at pp. 703-704 [69 L.Ed.2d at p. 350].) Consequently, the existence of the search warrant provides "objective justification" for the reasonableness of the police officer's decision to detain an individual at the scene. (*Ibid.*) Because a search warrant establishes there is probable cause to believe that criminal activity is being conducted at a given location, it adds additional credence to the need to detain an individual found there to protect the safety of the officers involved in the search. (*Id.* at p. 702 [69 L.Ed.2d at p. 349]; *People* v. *Glaser*, *supra*, 11 Cal.4th at p. 366.)

In defendant's case, no search warrant had been issued for the apartment, and there was no evidence of any criminal activity in progress. Sandoval entered the apartment with the consent of the resident, because he believed a juvenile for whom an arrest warrant had been issued was inside. Therefore, the need to detain defendant to protect the police officers is not as compelling as when a search warrant has been issued or when a police officer has a reasonable basis to believe criminal activity is occurring. But, the inquiry cannot end there. Given the circumstances as they existed at the time of defendant's detention, the question remains as to what governmental interest justified his detention.

When Sandoval and the other police officers entered the apartment, they did not know the layout of the apartment. They were unaware of who was present, other than the female who answered the door and invited them in, or the relationship of defendant and the other individual to the juvenile they were attempting to apprehend. Sandoval testified after he asked defendant and the other individual in the living room to remain seated, he "advised them what we were there for and asked them who they were in relationship to the person—the female we contacted and why they were possibly there." Objectively, it is reasonable for a police officer who is in a residence attempting to execute an arrest warrant to determine who is present. This is true even when he does not reasonably believe any one of them is the subject of the arrest warrant. If the police officer has received information the suspect he is attempting to arrest is in the residence, it is reasonable to conclude people inside may know the suspect and have information concerning where he might be found. Additionally, a reasonable police officer could be concerned the individuals in the residence not only know the suspect, but are either related to or friends with him. Therefore, it is reasonable to conclude the individuals may attempt to alert the suspect to the fact the police are there or might assist him in escaping. Consequently, there was a legitimate governmental interest in detaining defendant to determine who he

was and if he had any information concerning the juvenile they were searching for, while the other officers searched the apartment. In addition, the detention was reasonably necessary to ensure defendant did not warn the juvenile or assist him in evading arrest.

Finally, although officer safety was not as significant a factor for defendant's detention when compared to situations involving service of search warrants, it does not mean it was not *a* factor. ▪ "As the United States Supreme Court observed in *Maryland* v. *Buie* (1990) 494 U.S. 325 [108 L.Ed.2d 276, 110 S.Ct. 1093], involving the legality of a protective sweep during an in-home arrest, the dangers are particularly acute when an officer seeks to serve a warrant in a suspect's house. The officer is 'at the disadvantage of being on his adversary's "turf." An ambush in a confined setting of unknown configuration is more to be feared than it is in open, more familiar surroundings.' [Citation.]" (*People* v. *Glaser, supra*, 11 Cal.4th at p. 368.) Clearly, one of Sandoval's primary concerns when he asked defendant and the other individual to remain seated was the protection of himself and the other officers:

"Q. Now, before you made that observation, had you restrained Mr. Hannah's liberty at all?

"A. We asked him to remain seated where he was at.

"Q. Okay. And why was that?

"A. Just for our own protective scope of the search of the apartment."

He also explained the purpose of the protective search was to make sure there were no weapons present prior to completing the search.

▪ The reasonableness of the police officers' belief that detaining defendant, even briefly, was necessary to protect their safety must be evaluated from the perspective of the police officers who entered the apartment. They were entering a residence, the exact floor plan of which they were unaware, to arrest a juvenile they had been told may be present, when they encountered individuals whose identity and relationship to the juvenile they were seeking was unknown. Faced with these circumstances, any reasonable person would find an initial detention of the individuals encountered was necessary to ensure the safety of the police officers. (See *People* v. *Thurman, supra*, 209 Cal.App.3d at p. 823 ["To require an officer to await an overt act of hostility . . . before attempting to neutralize the threat of physical harm which accompanies an occupant's presence in a probable drug trafficking residential locale, would be utter folly."].)

Citing this court's decision in *Ingram, supra,* defendant claims he was a "mere visitor" at the apartment when the police arrived, and could not be detained without probable cause. However, defendant's reliance on his status as a "mere visitor" to immunize him from any police detention is misplaced. A close reading of the cases reveals that categorizing the person detained as a visitor, occupant or as having any other status is not determinative on the issue of whether a detention is reasonable. In *Glaser, supra,* the defendant was a "mere visitor," who had not even entered the house that was about to be searched. But, the California Supreme Court had no trouble finding his detention was warranted. (*People* v. *Glaser, supra,* 11 Cal.4th at p. 361.) Similarly, defendant has overstated this court's holding in *People* v. *Ingram, supra,* 16 Cal.App.4th 1745. This court did hold that police could not detain "mere visitors" when they execute a search warrant at a residence. However, we noted that under certain circumstances "police are free to question a visitor to ascertain his connection to the premises . . . ." (*People* v. *Ingram, supra,* 16 Cal.App.4th at p. 1752.)

Refusing to adopt a per se rule with regard to detention of individuals based on their status as occupants or visitors, in *Glaser, supra,* the California Supreme Court stated: "When in the course of initiating a search under warrant of a private residence for illegal drugs or related items, police officers encounter on the premises a person whose identity and connection to the premises are unknown and cannot immediately be determined without detaining the person, the officers may constitutionally detain him or her for the period of time required and in the manner necessary to make those determinations and to protect the safety of all present during the detention." (*People* v. *Glaser, supra,* 11 Cal.4th at p. 374.) There is no reason why a similar rule should not apply when police officers enter a residence to execute an arrest warrant.

The nature of the intrusion upon defendant was minimal. Balanced against this was the governmental interest in obtaining information, preventing a suspect from evading the police, and ensuring the safety of the police officers involved. Considering the totality of the circumstances, the initial detention of defendant was reasonable and legal.

B.  *The Length of the Detention**

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

*See footnote, *ante,* page 1335.

II.   *Defendant's argument challenging probable cause for his arrest fails since he never raised the issue before the trial court.*\*

. . . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment is affirmed.

Martin, Acting P. J., and Vartabedian, J., concurred.

---

\*See footnote, *ante*, page 1335.