Filed 10/20/15  P. v. Pollard CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>BRYON POLLARD,<br><br>Defendant and Appellant. | F068156<br><br>(Super. Ct. Nos. BF148477A & BF149122A)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  Colette M. Humphrey, Judge.

Tutti Hacking, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Daniel B. Bernstein and Peter H. Smith, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Levy, Acting P.J., Kane, J. and Detjen, J.

## INTRODUCTION

On September 6, 2013, defendant Bryon Pollard entered a plea of no contest to one count of possession of methamphetamine for sale (Health & Saf. Code, § 11378) and one count of possession of stolen property (Pen. Code, § 496, subd. (a)).[1] Pursuant to the plea, the trial court sentenced defendant to an aggregate prison term of three years eight months. On appeal, defendant (1) argues he was unlawfully detained prior to the search that yielded the evidence against him, (2) argues the patsearch that yielded the evidence was unreasonable, and (3) asks that we review the sealed transcripts of the trial court's in camera review of the personnel records of the officer who searched defendant to determine if all relevant *Pitchess*[2] material was disclosed. We find no error, and affirm the judgment in all respects.

## FACTS

On May 1, 2013, Probation Officers Shawna Lynn and Matthew Gomez, as well as two other probation officers, went to the listed address of probationer Chad Patterson, whom the officers intended to arrest for failure to report. After parking outside the residence, Lynn observed defendant standing at the end of the driveway. As Lynn approached the house, defendant quickly headed towards the front door of the residence while making furtive motions with his hands in the area of his waistband.

Lynn asked defendant to stop and show his hands, but he continued to walk towards the house. Lynn again ordered defendant to stop, and defendant complied. Lynn then turned defendant over to Gomez and went inside to search the house for Patterson.

While Lynn was inside the residence, Gomez, who had also witnessed defendant's furtive movements and was unsure if defendant was armed, conducted a patsearch of

---

[1]    The charges were in separate informations, but stemmed from the same underlying events.

[2]    *Pitchess v. Superior Court* (1974) 11 Cal.3d 531.

defendant. That search yielded a folding knife, four ounces of methamphetamine, and a digital scale. A subsequent search of defendant's vehicle yielded a stolen bulletproof vest. As a result of these discoveries, defendant was charged with possession of methamphetamine with intent to sell, and possession of stolen property.

Following his preliminary hearing, defendant filed a motion to suppress the evidence against him. The trial court denied defendant's motion, finding it was reasonable to detain an individual walking towards a residence where officers were headed to make an arrest, and also reasonable on officer safety grounds to patsearch an individual making furtive motions like the ones made by defendant. Following the trial court's ruling, defendant entered no contest pleas to the charges and filed the instant appeal.

## DISCUSSION

### I. Defendant was lawfully detained.

First, defendant argues that his detention at the hands of officers Lynn and Gomez was unlawful. We disagree.

When attempting to effect an arrest, officers may detain individuals on the premises so long as the detention is minimal and related to a legitimate government interest. (See *People v. Hannah* (1996) 51 Cal.App.4th 1335, 1347.) Legitimate government interests include officer safety, determining the whereabouts of the person to be arrested, or preventing the detained individual from warning the person to be arrested or assisting them in escaping. (*Id.* at pp. 1345-1346.)

Here, Lynn and Gomez were properly at the listed address of a Chad Patterson for the purposes of arresting him as a parole violator, and defendant was detained while on the property and heading towards the residence. Given the officers' legitimate interest in ascertaining defendant's relationship to Patterson, and preventing defendant from potentially alerting Patterson to an impending arrest, a brief detention was reasonable under the circumstances.

The detention was further justified on officer safety grounds, as defendant not only quickly retreated towards the house, but made furtive motions towards his waistband while his back was to Officer Lynn. Under those circumstances, there was a legitimate government interest in briefly detaining defendant to assess his dangerousness. When faced with an analogous situation in *People v. Hannah*, we noted the following:

> "The reasonableness of the police officers' belief that detaining defendant, even briefly, was necessary to protect their safety must be evaluated from the perspective of the police officers who entered the apartment. They were entering a residence, the exact floor plan of which they were unaware, to arrest [an individual] they had been told may be present, when they encountered individuals whose identity and relationship to the [individual] they were seeking was unknown. Faced with these circumstances, any reasonable person would find an initial detention of the individuals encountered was necessary to ensure the safety of the police officers." (*People v. Hannah*, *supra*, 51 Cal.App.4th at p. 1346.)

Here, while defendant was not inside the residence when he was detained, he was on the property and headed towards the residence while making furtive gestures. Under those circumstances, the logic of our findings in *People v. Hannah* applies, and supports the trial court's determination that the detention of defendant was reasonable on officer safety grounds. Further, the extent of defendant's detention was not overly intrusive. The record does not show a lengthy detention prior to the discovery of the contraband, and while defendant was eventually handcuffed and patsearched, the handcuffing occurred only after defendant did not cooperate with the patsearch. The patsearch itself, of course, was more than minimally invasive. As will be discussed below, however, it was also reasonable on officer safety grounds.

Given the legitimate government interests involved in detaining defendant, and the minimal nature of the intrusion prior to defendant's attempts to resist, we conclude the trial court did not err by finding defendant's detention to be lawful. Defendant attempts to rebut this conclusion on various grounds. First, defendant claims the detention was unlawful because there was no arrest warrant issued against Patterson, and the probation

4.

officers in question had no reasonable basis to believe that Patterson could be found at the address where defendant was later detained. A warrant, however, is not needed to affect the arrest of a probation violator, nor is the detention of individuals at the scene where law enforcement is attempting to arrest a probation violator necessarily unlawful in the absence of an arrest warrant. (*People v. Matelski* (2000) 82 Cal.App.4th 837, 851-852.) Further, it was imminently reasonable for the parole officers to believe that Patterson could be found at the address in question. While the record shows that Patterson was not present at the address on the day defendant was arrested, it was the address listed as Patterson's primary residence, and Lynn had previously visited Patterson at the residence.[3]

Defendant also contends his initial detention was unlawful because there was no evidence he was engaged in illegal activity. As noted above, however, bystanders may be detained without probable cause if the detention is minimal and is outweighed by legitimate government interests. Defendant also asserts that he lacked sufficient connection to the residence to be detained, and was a "casual visitor." However, "categorizing the person detained as a visitor, occupant or as having any other status is not determinative on the issue of whether a detention is reasonable." (*People v. Hannah*, *supra*, 51 Cal.App.4th at p. 1347.) Indeed, we have held that, in the course of effecting an arrest, a person on the premises whose identity and connection to the person to be arrested are unknown and cannot immediately be ascertained without detaining the person, a brief and reasonable detention is constitutionally permissible. (*Ibid*.)

---

**3**      Defendant asserts that the fact Patterson had failed to report was evidence he had absconded, which made it unreasonable to believe he would be present at his listed address. We must reject this contention because it leads to the illogical conclusion that it is unreasonable for probation officers to search for probationers who fail to report at their home addresses. We also reject defendant's classification of the residence as a "third party residence," as, again, Patterson listed the property as his home address.

5.

Lastly, defendant argues his detention was not minimal due to the stigmatizing nature of being publicly detained. While the stigma of public detention is a legitimate concern, it does not on its own outweigh the legitimate government interests that motivated the detention in this case. Without temporarily detaining defendant, there was simply no way for the officers to ascertain whether or not he posed an officer safety risk or was a potential threat to alert Patterson to the officers' arrival. Also, as noted above, nothing in the record suggests that defendant's detainment would have involved the more stigmatizing procedures of the patsearch and handcuffing had defendant not engaged in behavior that raised officer safety concerns or resisted Gomez's efforts to conduct a patsearch.

In sum, the totality of the circumstances in this case leads us to conclude that defendant's detention, while somewhat invasive, was outweighed by the legitimate government interests that were served by the detention.

## II. The patsearch of defendant was reasonable.

Next, defendant argues the patsearch conducted by Officer Gomez was unlawful, as there was insufficient evidence to conclude defendant was armed and dangerous. Again, we disagree.

When an officer detains an individual, the officer may conduct a patdown search if the officer has reason to believe the detained individual may be armed. (*Terry v. Ohio* (1968) 392 U.S. 1, 30; *People v. Lopez* (2004) 119 Cal.App.4th 132, 135-136.) "The officer must be able to point to specific and articulable facts together with rational inferences therefrom which reasonably support a suspicion the subject is armed and dangerous." (*People v. Dickey* (1994) 21 Cal.App.4th 952, 956.)

Here, both Lynn and Gomez observed defendant quickly walk away from them as they approached, and engage in furtive motions toward his waistband and pants pockets. Even after Lynn directed defendant to stop and display his hands, he turned his back to Lynn and continued reaching towards his waistband. While defendant is correct to note

6.

that a furtive gesture, taken alone, is insufficient to justify a search for weapons, the totality of the circumstances in this case amount to far more than an isolated furtive gesture. Defendant engaged in multiple furtive gestures, actively worked to shield his hands from the view of Lynn and Gomez, and defied direct requests to stop, turn around, and display his hands. Further, Gomez testified the area was a poorly lit, high-crime area. Again, while these factors do not individually justify a patsearch, taken together with defendant's prolonged evasive and furtive conduct, we find a reasonable officer would believe his or her safety was in danger. Accordingly, the officer could properly conduct a protective search for weapons.

III. *There was no relevant Pitchess material for the trial court to disclose.*

Following his preliminary hearing, defendant filed a *Pitchess*[4] motion seeking the disclosure of any materials within Gomez's personnel file relating to lack of credibility, prior wrongful acts involving moral turpitude, and "[d]ishonesty/untruthfulness/veracity/false testimony/false arrest/false reporting/conduct unbecoming an officer/neglect of duty[.]" The trial court granted defendant's motion for *Pitchess* discovery and, after in camera review of Gomez's personnel files, found no disclosable information.

On appeal, defendant requests that we review the in camera proceedings to determine if the trial court followed appropriate procedures and released all relevant *Pitchess* material. Having examined the sealed record, we conclude that the trial court reviewed the files in their entirety and adequately stated the contents of those files for the record. We also conclude the file contained no relevant *Pitchess* material. Accordingly, defendant is not entitled to any relief.

---

**4** See *Pitchess v. Superior Court*, *supra*, 11 Cal.3d. 531. The California Legislature codified the privileges and procedures set out in *Pitchess* through the enactment of Penal Code sections 832.7 and 832.8 and Evidence Code sections 1043 through 1045. (*City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74, 81.)

**DISPOSITION**

The judgment is affirmed.