Filed 3/19/13  P. v. Sandoval-Gonzalez CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C070628 |
| Plaintiff and Respondent, | (Super. Ct. No. 11F08530) |
| v. | |
| JOSE LUIS SANDOVAL-GONZALEZ, | |
| Defendant and Appellant. | |

After his motion to suppress the evidence (Pen. Code, § 1538.5) was denied, defendant Jose Luis Sandoval-Gonzalez entered a plea of no contest to possession of cocaine (Health & Saf. Code, § 11350, subd. (a)).  The court suspended imposition of sentence and granted probation for a term of five years.

Defendant appeals, challenging the denial of his suppression motion.  We will affirm.

**FACTS**

About 2:30 p.m. on December 16, 2011, Citrus Heights Police Officer Dwight Turner responded to a report of an assault with a deadly weapon at a Mariposa Avenue

1

address. The apartment manager told the officer that "it was a chaotic scene where at least six male Hispanic subjects got out of a vehicle and beat several other subjects that were in the area." The manager described some of the subjects as wearing all black, some were wearing red, and some on the other side were dressed in blue. The manager believed the fight was "possibly gang related." The manager stated that some of the subjects used a baseball bat and a barbell-type bar.

Officers spoke with the victims, who ranged in age from 16 to 19 years old. One victim had a gash on his head. Another victim had a several-inches-long cut to his stomach area, which he claimed was caused by "some type of a sharp object."

The manager described the suspects' car, including its license plate number. Within an hour and a half, based on the vehicle description, the officers stopped the car. "The subject that was in that vehicle [driver or passenger] was on probation, came back to [an] address [of 6802 Trovita Way]."

About 4:00 p.m., Officer Turner and four other officers went to the Trovita Way residence where the vehicle was registered and where the driver or passenger lived, approximately two miles from the Mariposa Avenue address, to conduct a probation search and to check for possible suspects in the assaults. Upon arrival, Officer Turner saw about six male Hispanics, some in black clothing, in the court area in front of the residence. Based on recent prior contacts, officers recognized some of the subjects as being involved in gangs and also living at that residence. Officer Turner saw defendant walking down the driveway in front of the residence where, the officer later learned, defendant lived. Officer Turner believed that defendant could possibly have been involved in the assaults.

At some unspecified point, the officer had learned the suspects ranged in age from 15 to 19 years old. Defendant was 39 years of age. Another officer directed defendant to approach her. All the subjects were directed to approach the officers. Officer Turner then directed defendant to get onto his knees so that he could conduct a patdown search

2

for weapons. Defendant was not placed in handcuffs. The officer patted down the outside of defendant's clothing without manipulating any items. In defendant's left pants pocket, the officer noted "three bulges and then another object had a pointy-type edge to it," which, based on his training and experience, the officer believed "could possibly be a weapon." Officer Turner stated that he knew "gang members and affiliates, they can make home made weapons. I can go on and on what something that small could be, so I couldn't rule it out as not being a weapon." The officer removed the object to determine if it was a weapon. He pulled out three cigarette lighters, a Ziploc baggie containing cocaine, and a Visine eyedrop bottle with a point to the cap/lid. The officer did not collect and book the Visine bottle.

In denying the motion, the court noted the vehicle had been identified as being at the scene of what "may or may not have been a gang fight" and was registered to the address where the defendant was observed, so he was "directly connected to the vehicle." The court determined that the officer had a reasonable basis for the patdown. The officer felt a sharp object in defendant's pocket, commenting that "even the end of a toothbrush can be used as a weapon if it's sharpened up enough." The court noted that although no one reported to the officer that he or she had seen a knife, the "open cut wounds horizontally across the stomach, laying open parts of the tissue and muscles" suggested that some object in addition to those seen had caused the injury. The court concluded that there was "no reason the officer has to not take full steps to make sure that he and his fellow officers are safe."

## DISCUSSION

Defendant contends that his detention and patdown search were unsupported by reasonable cause, and that the removal of the items from his pocket was improper. We reject defendant's claims.

"In reviewing the denial of a motion to suppress evidence, we view the record in the light most favorable to the trial court's ruling and defer to its findings of historical

3

fact, whether express or implied, if they are supported by substantial evidence. We then decide for ourselves what legal principles are relevant, independently apply them to the historical facts, and determine as a matter of law whether there has been an unreasonable search and/or seizure." (*People v. Miranda* (1993) 17 Cal.App.4th 917, 922; see *People v. Jenkins* (2000) 22 Cal.4th 900, 969.)

**Detention**

"To justify an investigative stop or detention, the circumstances known or apparent to the officer must include specific and articulable facts which, viewed objectively, would cause a reasonable officer to suspect that (1) some activity relating to crime has taken place or is occurring or about to occur, and (2) the person the officer intends to stop or detain is involved in that activity." (*People v. Conway* (1994) 25 Cal.App.4th 385, 388 (*Conway*); see *People v. Souza* (1994) 9 Cal.4th 224, 230.) "The guiding principle in determining the propriety of an investigatory detention is 'the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security.' [Citations.] In making our determination, we examine 'the totality of the circumstances' in each case. [Citations.]" (*People v. Wells* (2006) 38 Cal.4th 1078, 1083.)

"Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability." (*Alabama v. White* (1990) 496 U.S. 325, 330 [110 L.Ed.2d 301, 309].) "Neither a previous demonstration of reliability nor subsequent corroboration is ordinarily necessary when witnesses to or victims of criminal activities report their observations in detail to the authorities." (*People v. Brueckner* (1990) 223 Cal.App.3d 1500, 1504.)

In impliedly finding defendant's detention reasonable, the trial court cited the fact that the suspect vehicle was registered to the address where defendant was found. Defendant argues this fact "supplies absolutely no basis whatsoever to suppose [he] was

4

involved in the fight or in any other criminal activity."[1]  Defendant contends his detention was unreasonable because the facts known to the officers "*excluded*" him since he did not fit the description of the suspects in the manner of dress or age, nothing linked him to the vehicle in which the suspects fled or to the other people who did match the description, and there were no facts connecting him to any criminal activity or gangs or weapons.  We conclude that defendant's detention was reasonable.

The officer had just been to the scene of a gang fight.  The apartment manager had described the scene as "chaotic" and involving *at least six* male Hispanics, some of whom used a baseball bat and a barbell-type bar.  One victim, who had a significant cut to his stomach, described a sharp object.  Some of the suspects wore all-black clothing and some wore red.  The other side had on blue, which suggested to the manager that the fight was gang related.  The victims were 16 to 19 years of age.  At some unspecified time, the officer learned the suspects were 15 to 19 years of age.[2]  The manager described the suspects' car, including its license plate number.  An hour and a half later and about two miles away from the fight scene, the officers went to the residence where the suspect car was registered.  The car had been stopped within that time frame and the driver or passenger was on searchable probation.  Officers went to the residence to conduct a probation search and to investigate the gang fight.  Upon arrival, Officer Turner saw *six* Hispanic males, some in black clothing in front of the residence and defendant walking down the driveway of that residence.  Officers recognized some of the suspects as being

---

[1]  The People claim that Officer Turner saw the suspect vehicle upon arrival at the residence where the vehicle was registered.  As defendant replies, the record does not support the People's claim.  The car was stopped at some unspecified location, and the officers then went to the residence to conduct a probation search and to further investigate.

[2]  Defendant argues the officer learned this fact at the scene of the fight.  The record does not clearly so indicate.

involved in gangs and living at the residence. Defendant does not deny that he appears to be Hispanic or male. While a vague description of a Hispanic male would not provide reasonable grounds to stop defendant, who fit that description (*In re Carlos M.* (1990) 220 Cal.App.3d 372, 381-382), the officers here had much more. Defendant focuses on the differences. That defendant was 39 years old at the time and the officer did not recall his clothing did not eliminate him from the possible suspects given his race and gender *and* the other circumstances. Defendant was present at the house, which was located within two miles from the fight scene. (See *Conway*, *supra*, 25 Cal.App.4th at p. 390; *People v. Lazanis* (1989) 209 Cal.App.3d 49, 54; *People v. Jones* (1981) 126 Cal.App.3d 308, 313-314.) Other Hispanic males were in the court area in front of the residence. Some were in black clothing and some were recognized as affiliated with gangs. (*Carlos M.*, *supra*, 220 Cal.App.3d at p. 382.) The suspect vehicle had been accurately described (*Jones*, *supra*, 126 Cal.App.3d at p. 314), had been stopped, and was registered to the house. A probation search would be conducted of the house where the driver or passenger lived. Given these additional circumstances, the officers would have been remiss in their duties had they not called over all six Hispanic males for further investigation. (*People v. Dolliver* (1986) 181 Cal.App.3d 49, 56.) Reasonable suspicion justified defendant's detention. Moreover, in the course of conducting a probation search, officers may constitutionally detain a subject encountered on the premises to determine the subject's connection to the premises, and if the subject is an occupant of the residence to be searched, the subject may be detained the duration of the search. (*People v. Matelski* (2000) 82 Cal.App.4th 837, 841, 848-853 (*Matelski*); see *People v. Glaser* (1995) 11 Cal.4th 354, 374.) Here, as the prosecutor argued, the officers, having gone to the residence in part to conduct a probation search, were entitled to detain defendant to determine his connection to the residence. The officer learned defendant lived at the residence, so he could be detained for the duration of the probation search.

6

**Patdown Search and Removal of Items**

*Minnesota v. Dickerson* (1993) 508 U.S. 366, 373 [124 L.Ed.2d 334, 344] (*Dickerson*) states: " '[W]hen an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others,' the officer may conduct a patdown search 'to determine whether the person is in fact carrying a weapon.' [Citation.] 'The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence . . . .' [Citation.] Rather, a protective search -- permitted without a warrant and on the basis of reasonable suspicion less than probable cause -- must be strictly 'limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby.' " "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." (*Terry v. Ohio* (1968) 392 U.S. 1, 27 [20 L.Ed.2d 889, 909] (*Terry*).)

"If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context." (*Dickerson, supra,* 508 U.S. at pp. 375-376 [124 L.Ed.2d at p. 346], fn. omitted.) "The police are not required to grab blindly after a frisk reveals a possible weapon. A blind grab could risk injury either to the officer or the suspect." (*People* v. *Limon* (1993) 17 Cal.App.4th 524, 536.) Once the officer believes a concealed object is not a weapon, he "cannot continue to palpate the object without probable cause to search the suspect." (*Ibid.*)

Here, Officer Turner patted down defendant because he believed defendant might have been involved in the assaults and was possibly armed. One victim suffered a significant cut to the stomach area, which the victim believed was caused by a sharp

7

object.  It was reasonable to expect the presence of a knife or other sharp instrument on at least one or more of the suspects, which included defendant.  Moreover, the officers were conducting a probation search at the residence.  The officers were entitled to continue their investigation and question defendant without fear of being harmed.  The officer's justification was reasonable, which permitted the patdown search.  (*Terry, supra,* 392 U.S. at pp. 23-24, 27 [20 L.Ed.2d at pp. 907-909]; *Matelski, supra,* 82 Cal.App.4th at p. 850.)

Once Officer Turner patted down defendant, he felt an object with a "pointy-type edge to it" that suggested a possible weapon.  In other words, it was not immediately apparent whether the object was a weapon.  The officer explained that based on his training and experience, gang members and affiliates make small weapons.  "Law enforcement officers may 'draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that "might well elude an untrained person." [Citations.]' [Citation.]" (*People v. Hernandez* (2008) 45 Cal.4th 295, 299.)  The officer testified he did not manipulate the item in making his determination that it might be a weapon.  The officer's justification was reasonable, which permitted the removal of the item from defendant's pocket and resulted in the discovery of cocaine in the Ziploc baggie.  The trial court properly denied defendant's suppression motion.

## DISPOSITION

The judgment is affirmed.

                                   RAYE        , P. J.

We concur:

      NICHOLSON    , J.

      BUTZ          , J.