Filed 9/20/22  P. v. Johnson CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>MARCUS GARY JOHNSON,<br><br>  Defendant and Appellant. | A163270<br><br>(Solano County Super. Ct. No. FCR353742) |

Marcus Gary Johnson was convicted of three counts of felony identity theft with a prior identity theft conviction (Pen. Code, § 530.5, subd. (c)(2); counts one to three)[1] and one count of forgery (§§ 473, subd. (a), 475, subd. (b); count four).  On appeal, Johnson challenges the denial of his motions to suppress evidence, contends the trial court erred in admitting statements he made to police without warnings required by *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*),  and suggests that recent ameliorative changes to the determinate sentencing law (§ 1170) apply retroactively.  The People concede the trial court erred in denying one suppression motion and that reversal of Johnson's convictions on counts two, three and four is required.  We agree and remand for resentencing.

---

[1] Undesignated statutory references are to the Penal Code.

1

## BACKGROUND

On July 12, 2019, Johnson was a passenger in a car that was stopped for a traffic violation. After the driver (Bagwell) was arrested for driving on a suspended license, Bagwell consented to a search of the car. In searching the car, Fairfield Police Department officer Amanda Graham discovered Johnson was in possession of identification cards and other identifying information, including an electronic benefit transfer card, that belonged to other people. This incident formed the basis for count one.

Ten days later, Johnson was sitting in the passenger seat of another parked car. On determining that the owner of the car (Dorianna Mays) was on probation with a warrantless search condition, Vacaville Police Department officer Matthew Taylor conducted a probation search. On the passenger side of the car, Taylor found a bag that contained a driver's license belonging to A.D. and four blank checks belonging to B.H. When Taylor asked Johnson if the bag was his, Johnson replied affirmatively. Johnson was arrested and a search, incident to his arrest, revealed that he had a credit card belonging to B.H. in his pocket. These facts formed the basis for counts two through four.

The parties stipulated that Johnson had suffered a prior conviction for identity theft. The jury convicted Johnson on all three counts of felony identity theft (with a prior identity theft conviction) plus one count of forgery.

At sentencing, the trial court imposed the upper term of three years for the principal term—count three—plus a consecutive eight-month term (one-third the middle term) for each of the two additional identity theft counts (counts one and two). The court stayed punishment on count four (forgery). The trial court imposed a split sentence (§ 1170, subd. (h)(5)(B)): Johnson was to serve the first three years (of his aggregate four

2

years and four months sentence) in county jail and the remainder of his sentence on mandatory supervision.

## DISCUSSION

### A.

Johnson contends that the trial court should have granted his motion to suppress evidence discovered on July 12 as fruit of an unlawful pat search. We disagree.

### 1.

In reviewing a suppression ruling, we defer to the trial court's factual findings if supported by substantial evidence. We independently determine whether, on the facts so found, the challenged search or seizure was reasonable under the Fourth Amendment. (*People v. Brown* (2015) 61 Cal.4th 968, 975.) Whether a search is reasonable must be determined based upon the circumstances known to the officer when it was conducted. (*In re H.M.* (2008) 167 Cal.App.4th 136, 144.)

During a lawful traffic stop, a police officer may detain both the driver and any passengers (and order them out of the car) without any additional cause to believe a passenger is involved in criminal activity. (*Arizona v. Johnson* (2009) 555 U.S. 323, 327, 331 (*Arizona*); *Maryland v. Wilson* (1997) 519 U.S. 408, 413, 415.) However, to justify a pat search of either the driver or a passenger, the police must have a reasonable suspicion that the person is "armed and dangerous." (*Arizona, supra,* at pp. 327, 332.)

### 2.

In his motion to suppress, Johnson argued that he was detained and searched, on July 12, without reasonable suspicion or probable cause. At the suppression hearing, officer Graham testified that she pulled over Bagwell's Mercedes after observing that the car was missing a front license plate and that Bagwell

(the driver) had flicked a cigarette out the window. Johnson was sitting in the front passenger seat.

On making initial contact with Bagwell, Graham discovered that he was driving with a suspended license, so she removed him from the car and detained him. Graham also ordered Johnson to exit the vehicle, pat searched him, and ordered him to sit on the curb. Graham admitted that she had no reason to believe Johnson was armed or dangerous.

Bagwell consented to a search of his vehicle. During the search, a second officer stood near Johnson. Graham found a black bag between the car's center console and the front passenger seat. Inside the bag, Graham found personal identification cards, electronic benefit transfer cards, printed driver's licenses, and other personal information belonging to people other than Johnson or Bagwell.

Graham asked Bagwell if the bag was his, which Bagwell denied. Bagwell said he had never seen the bag before. Graham then placed Johnson under arrest. Incident to his arrest, Graham searched Johnson and found, in his back pocket, a spiral notebook that contained more personal identifying information, including a social security number that matched an individual whose information was also in the black bag. After Johnson was given *Miranda* warnings, he told Graham that the bag did not belong to him.

At the conclusion of the evidence, defense counsel argued that Graham lacked probable cause to arrest Johnson and sought only to suppress the notebook found on Johnson's person. Defense counsel did not seek to suppress the evidence found in Bagwell's car. The magistrate denied the motion.

Johnson later renewed his motion to suppress and filed a motion to set aside the consolidated information, pursuant to section 995. Johnson insisted he was unlawfully pat searched,

4

but did not connect this assertion to the evidence obtained from Bagwell's car. In fact, Johnson's arguments continued to focus solely on suppressing the notebook discovered incident to his arrest. The court denied Johnson's motion.

### 3.

First, we agree with the People that Johnson forfeited his current argument—that both the evidence obtained from searching Bagwell's car and the notebook found in Johnson's pocket must be suppressed because Graham conducted an illegal pat search of Johnson—by failing to raise it below. (See Evid. Code, § 353, subd. (a); *People v. Silveria and Travis* (2020) 10 Cal.5th 195, 235; *People v. Polk* (2010) 190 Cal.App.4th 1183, 1194-1195.)

Second, even if we assume (for the sake of argument) that Johnson's current argument was not forfeited, and that Johnson's pat search was unlawful, Johnson's challenge fails because he cannot show that an allegedly involuntary search of Bagwell's car violated his *personal* Fourth Amendment rights. (See *Rakas v. Illinois* (1978) 439 U.S. 128, 133-134 (*Rakas*).)

It is settled that a defendant's Fourth Amendment rights are not infringed solely because the state was allowed to introduce damaging evidence recovered from a third person's property, even if that search was unlawful. (*Rakas, supra,* 439 U.S. at p. 134.) To prevail on a motion to suppress, a defendant bears the burden to prove he had a legitimate expectation of privacy in the particular area searched or the property seized. (*Id.* at p. 143; *People v. Valdez* (2004) 32 Cal.4th 73, 122; *People v. Williams* (1992) 3 Cal.App.4th 1535, 1539.)

As a mere passenger in Bagwell's car, Johnson failed to meet his burden to show that he had a reasonable expectation of privacy in Bagwell's car sufficient to show that his personal Fourth Amendment rights were violated by an allegedly unlawful

consent search. (See *Rakas, supra,* 439 U.S. at pp. 130-131 & fn. 1, 148-149; *People v. Casares* (2016) 62 Cal.4th 808, 835 ["legitimate expectation of privacy in a vehicle requires a showing of a property or possessory interest therein"], disapproved on other grounds by *People v. Dalton* (2019) 7 Cal.5th 166, 214; *People v. Valdez, supra,* 32 Cal.4th at p. 122.)

Johnson suggests, in passing in his reply brief, that his claim is actually that the police illegally searched the black bag found inside Bagwell's car and that he had a legitimate expectation of privacy *in the bag.* (See *People v. Schmitz* (2012) 55 Cal.4th 909, 930.) Even if we assume this argument was preserved on appeal, the record does not support his position.

The only evidence offered on this point at the suppression hearing was that Bagwell owned the car, that Graham found the black bag in between the front passenger seat (where Johnson had previously been sitting) and the center console, that the bag contained identification cards and other identifying information for individuals who were not Johnson, and that both Bagwell and Johnson explicitly disavowed ownership of the bag. Unlike in *People v. Koury* (1989) 214 Cal.App.3d 676, 683, 690-691, Johnson did not testify that he owned the black bag found in Bagwell's car. Nor did Bagwell or Johnson testify that Johnson had the bag with him when he entered the car or otherwise explain how it came to rest where it was found.

Both drivers and passengers have reduced expectations of privacy in the interior of a car and its contents. (*People v. Schmitz, supra,* 55 Cal.4th at pp. 920, 930.) Although the bag's location next to the passenger seat in Bagwell's car is not irrelevant (*People v. Koury, supra,* 214 Cal.App.3d at p. 686), we conclude this evidence is insufficient to meet Johnson's burden to establish a legitimate expectation of privacy under the totality of the circumstances.

Contrary to Johnson's assertion, there is nothing fatally inconsistent in allowing the People to simultaneously maintain that Johnson possessed the items in the black bag while also arguing Johnson failed to meet his burden to show he had a legitimate expectation of privacy. (*United States v. Salvucci* (1980) 448 U.S. 83, 91.)

Johnson has not demonstrated that the trial court erred in denying his motion to suppress or his section 995 motion. We need not separately consider Johnson's argument that his trial counsel provided ineffective assistance.

**B.**

Johnson also moved below to suppress certain evidence obtained on July 22, pursuant to section 1538.5. He now contends that, on that date, officer Taylor violated his federal Fourth Amendment rights by prolonging his detention beyond the time reasonably necessary to investigate Mays's traffic violation. The People concede that Johnson's second detention was unconstitutionally prolonged and we agree.

**1.**

A police detention is a seizure of an individual "strictly limited in duration, scope, and purpose[.]" (*In re Manuel G.* (1997) 16 Cal.4th 805, 821.) In *Terry v. Ohio* (1968) 392 U.S. 1 (*Terry*), the Supreme Court established that circumstances short of probable cause may justify a police officer briefly detaining a person for questioning. (*Id.* at p. 22.) An individual may be detained by the police " 'if there is an articulable suspicion that a person has committed or is about to commit a crime.' " (*Wilson v. Superior Court* (1983) 34 Cal.3d 777, 784.)

Because *Terry* detentions cannot be subjected to the warrant procedure, they are instead tested against the Fourth Amendment's general proscription against unreasonable searches and seizures. (*Terry, supra,* 392 U.S. at p. 20.) Accordingly, courts must identify the government interest allegedly justifying

7

the intrusion and balance that need against the invasion the search entails. (*Id.* at pp. 20-21.) The police officer must point to "*specific and articulable facts* which, taken together with rational inferences from those facts," reasonably justify a particular intrusion. (*Id.* at p. 21, italics added.)

Traffic violations justify a relatively brief investigatory detention by police. (*Rodriguez v. United States* (2015) 575 U.S. 348, 354 (*Rodriguez*).) However, absent independent indications of criminal activity beyond the initially observed infraction, officers may not extend a stop's duration beyond the time reasonably necessary to attend to officer safety concerns and to issue a ticket for the traffic violation. (*Id.* at pp. 350-351, 354.) An officer is permitted to inquire into matters unrelated to the suspected traffic violation (*Arizona, supra,* 555 U.S. at p. 333), but may not do so in a way that prolongs the stop *unless* the officer also has the reasonable suspicion demanded to ordinarily justify an individual's detention. (*Rodriguez, supra,* 575 U.S. at pp. 355, 357-358.)

### 2.

Taylor testified, at the suppression hearing, that he observed a black Nissan, with an expired registration tag, parked in a parking lot. The car's owner (Mays) was sitting in the driver's seat. Johnson was sitting in the front passenger seat. On approaching the vehicle and initially contacting Mays, Taylor learned that she was on probation and subject to a warrantless search condition.

After learning of Mays's probation status, Taylor decided to conduct a probation search of her vehicle. Taylor had both Mays and Johnson exit the car, pat searched Johnson for weapons, and then instructed Johnson to sit at the curb about 15 feet away. Another officer stood guard over Mays and Johnson while Taylor searched Mays's vehicle for approximately 23 minutes.

8

During the search of Mays's car, Taylor discovered a black bag on the floor in front of the passenger seat. The bag contained a driver's license for A.D., blank checks and a credit card in B.H.'s name, counterfeit $100 bills, two methamphetamine pipes, and a Social Security card, medical records and birth certificate belonging to other individuals. After the search, Taylor asked Johnson if the bag and its contents belonged to him. Johnson answered affirmatively.

After this evidence was received, defense counsel argued that Johnson's detention was unduly prolonged because Johnson had not been the target of the probation search. The magistrate denied the suppression motion, explaining that the initial detention was lawful based on Mays's expired car registration and that, on discovering Mays was on probation, Taylor was authorized to remove and continue Johnson's detention for the more than 20 minutes that Mays's car was searched.

Johnson later renewed his motion to suppress and filed a motion to set aside the consolidated information (§ 995), which the court denied.

### 3.

Johnson does not dispute that he was lawfully detained in connection with Mays's traffic violation. (*Rodriguez, supra*, 575 U.S. at p. 354; *Arizona, supra,* 555 U.S. at pp. 327, 331.) Although his argument is not a model of clarity, we do not understand him to be arguing that his detention was unduly prolonged by Taylor's discovery (during the initial interaction) that Mays was on probation and subject to a warrantless search condition or by Taylor's order that Johnson exit the car. (*Arizona, supra,* at p. 333; *Maryland v. Wilson, supra,* 519 U.S. at pp. 413, 415; *Rodriguez, supra,* at pp. 355, 357-358.)

Instead, Johnson appears to argue that the Fourth Amendment was violated when, after pat searching Johnson and

(apparently finding nothing), Taylor kept him detained for an additional 23 minutes while searching Mays's car. Although Taylor was justified in searching the Nissan because he knew of *Mays's* probation search condition (*Samson v. California* (2006) 547 U.S. 843, 846), the People correctly concede that the record contains no evidence of an independent basis justifying *Johnson's* continued detention.

Taylor's testimony suggests he believed that Johnson's mere presence in Mays's car (with Mays who was subject to a probation search condition) justified detaining Johnson for officer safety purposes as long as necessary to conduct the probation search. We know of no blanket rule (and the People have not cited one) allowing police officers to routinely detain third parties—who are *not* themselves subject to probation search conditions—in such a manner. (See *People v. Gutierrez* (2018) 21 Cal.App.5th 1146, 1157, 1159-1161 (*Gutierrez*); *People v. Glaser* (1995) 11 Cal.4th 354, 373-374 (*Glaser*) [declining to adopt a general rule, in the search warrant context, that mere presence alone at premises to be searched justifies detention to determine identity and connection].)

In some circumstances when officers conduct a probation search or execute a search warrant, the presence of an unknown person (not the target of a search) may reasonably justify a brief detention of that unknown person—in order to identify the unknown person and protect searching officers. (See *Glaser, supra,* 11 Cal.4th at pp. 374-375, 367 [approving limited detention of two minutes or less in search warrant context]; *Gutierrez, supra,* 21 Cal.App.5th at pp. 1157, 1160-1161; *People v. Matelski* (2000) 82 Cal.App.4th 837, 852.) However, in refusing to adopt a general rule in the search warrant context, our Supreme Court reasoned that blanket approval of third party detentions during searches would present too much risk that officers would simply rely on guilt by association in order to stop

and frisk anyone seen near prospective criminal activity. (*Glaser, supra*, at p. 374.)

Furthermore, it is now well established that even a lawful detention (justified at its outset) becomes unconstitutional when it is extended beyond the time reasonably necessary under the circumstances without an independent articulable suspicion of criminal conduct. (*Rodriguez, supra*, 575 U.S. at pp. 350-353 [detention pursuant to traffic stop unreasonably prolonged by seven or eight minutes (to obtain sniff by police dog) after violation resolved with warning]; *Gutierrez, supra*, 21 Cal.App.5th at pp. 1159-1160 [detention of third party present at probationer's home unreasonably prolonged when it lasted more than 30 minutes after pat search revealed third party had no weapons].)

We would normally engage in a detailed analysis weighing the extent of the government's intrusion against the government's justifying interests. (See *Gutierrez, supra*, 21 Cal.App.5th at p. 1159; *Glaser, supra*, 11 Cal.4th at p. 365.) Here, however, the People concede that the extent of the government's intrusion outweighs any interests justifying Johnson's continued detention.

We note that Johnson's challenged detention was not particularly brief. It lasted approximately 23 minutes, in a public parking lot—subjecting Johnson to potential embarrassment and stigma. Three officers were on the scene and one was specifically tasked with guarding Mays and Johnson throughout the duration of the search.

Very little sits on the other side of the scale. The People—who bear the burden of justifying Johnson's continued detention—never presented facts suggesting that they needed to determine who Johnson was (or if he was a felon or a gang member) to decide if Mays was prohibited from associating with him. (Cf. *People v. Rios* (2011) 193 Cal.App.4th 584, 595; *People*

11

*v. Matelski, supra*, 82 Cal.App.4th at pp. 852-853.) Nor did the People develop a record establishing when Taylor found the black bag on the passenger-side floorboard, much less argue that this discovery justified continued detention of Johnson. (See *People v. Russell* (2000) 81 Cal.App.4th 96, 102.)

The only reason Taylor gave for the continued detention was his need for safety while completing a probation search of Mays's car. Officer safety concerns may, in these circumstances, justify a limited detention at the outset. (*Gutierrez, supra*, 21 Cal.App.5th at p. 1160.) But, here, Taylor articulated no specific facts justifying a pat search and then kept Johnson detained for more than 23 minutes *after* a pat search apparently revealed Johnson had no weapons.

The prosecution failed to meet its burden. On this record, we agree with the parties that Johnson's detention was unconstitutionally prolonged in violation of the Fourth Amendment. (See *Gutierrez, supra*, 21 Cal.App.5th at pp. 1160-1161 [similar detention lasting more than 30 minutes after uneventful pat search not justified by specific and articulable facts].) The orders denying Johnson's motions to suppress must be reversed.

The People further concede that the remaining evidence is insufficient to prove Johnson guilty beyond a reasonable doubt, and that it is necessary to reverse Johnson's convictions on counts two though four and remand for resentencing. Accordingly, we need not reach Johnson's additional assertion of *Miranda* error. Likewise, we need not decide whether resentencing is independently mandated by the Legislature's recent amendment of section 1170. (See Sen. Bill No. 567 (2021–2022 Reg. Sess.), Stats. 2021, ch. 731, § 1.3.) On remand, the trial court must resentence Johnson in compliance with the current determinate sentencing law.

## DISPOSITION

The judgment is reversed in part. Johnson's convictions on counts two through four are vacated, and the matter is remanded for further proceedings consistent with this opinion. After Johnson is resentenced under the amended version of section 1170, subdivision (b), the superior court clerk is directed to prepare and forward an amended abstract of judgment to the Solano County Sheriff's Department and any other appropriate agency. In all other respects, the judgment is affirmed.

_____

BURNS, J.

We concur:

_____

JACKSON, P.J.

_____

SIMONS, J.

A163270